## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 20-cr-20 (MJD/HB) |
| Plaintiff, | |
| v. | **REPORT AND** |
| Alan Gaines, | **RECOMMENDATION** |
| Defendant. | |

Aaron Gott, Bona Law PC, 15 S. 9th Street, Ste 239, Minneapolis, MN, 55402 and
Travis Noble, Sindel Noble, 8000 Maryland Avenue, Ste 910, Clayton, MO, 63105;
for Defendant Alan Gaines

Carla Stern and Sandra Talbott, Department of Justice Antitrust Division, 209 S. LaSalle
Street, Ste. 600, Chicago, IL, 60604; for the United States of America

HILDY BOWBEER, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Defendant

Alan Gaines's Motion to Dismiss or, In the Alternative, for an Order that the Rule of

Reason Applies [Doc. No. 31]. The motion was referred to the undersigned for a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local

Rule 72.1. The Court held a hearing on the motion on July 24, 2020, and took the motion

under advisement on that date. For the reasons set forth below, the Court recommends

the motion be denied.

## I.    Background

On January 30, 2020, Defendant was charged with one count of Conspiracy to

Restrain Trade, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1). (*See* Indictment [Doc. No. 1].) The Indictment alleges that from July 2012 through May 2018, Defendant engaged in a conspiracy to suppress and eliminate competition by fixing prices, rigging bids, and allocating markets for lots offered for sale by GSAAuctions. (*Id.* ¶ 1.)

GSAAuctions is an electronic system operated by the General Services Administration (the "GSA"), an agency of the federal government. (*Id.* ¶ 4.) GSAAuctions runs a website that allows individuals to bid electronically on a wide variety of public assets, including equipment or technology that is no longer needed. (*Id.*) The assets are grouped together in lots and designated for sale via an online auction that opens and closes at a specified time and date. (*Id.* ¶ 5.) Individuals interested in purchasing something are assigned an anonymous identifier—such as Bidder #1 or Bidder #2—and can then submit their bids electronically. (*Id.*) While the lot is "open," prospective bidders can submit bids and monitor competing bids through the GSAAuctions website.

During the period in question, Defendant was a resident of Missouri and a registered participant in the online auctions. (*Id.* ¶ 6.) The Indictment alleges that Defendant worked with co-conspirators in Texas and Pennsylvania to purchase computer equipment via GSAAuctions. (*Id.* ¶ 9.) Defendant and his co-conspirators allegedly shared their anonymous Bidder identification numbers and communicated with each other before and during auctions. (*Id.* ¶ 3.) In this way, the Indictment alleges Defendant and his partners were able to form an illicit agreement not to compete against each other;

select who would bid on particular lots and who would refrain from bidding on those lots; and designate which co-conspirator would win a particular lot, before splitting the proceeds among themselves.  (*Id.*)  As a result, the Government believes Defendant and his colleagues were able to win lots at collusive and noncompetitive prices.  (*Id.*)

Defendant raises two challenges to the Indictment.  He argues first that the Indictment's reliance on the per se rule amounted to an unconstitutional "conclusive evidentiary presumption."  (Def.'s Mot. at 6 [Doc. No. 31].)  Defendant also argues that his actions should be evaluated under the rule of reason because they were only ancillary restraints of trade.  (*Id.*)

## II.    Discussion

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."  *United States v. Huggans*, 650 F.3d 1210, 1217 (8th Cir. 2011) (quotations omitted).  A defendant may raise by pretrial motion any objection, including a challenge to the sufficiency of an indictment, that the Court can "determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).

An indictment will ordinarily be considered sufficient "unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense" at issue. *United States v. Hayes,* 574 F.3d 460, 472 (8th Cir. 2009) (quotations omitted).

3

In making that assessment, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hughson*, 488 F. Supp. 2d 835, 841 (D. Minn. 2007) (quotations omitted). The Court's assessment is therefore ordinarily limited to the four corners of the indictment. *Id.*

## A.    The Per Se Rule

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal," and every person who makes such a contract or engages in any such combination or conspiracy is guilty of a felony. 15 U.S.C. § 1. The Supreme Court has stated that Section 1 prohibits "'unreasonable restraints' of trade." *Ohio v. Am. Ex. Co.*, 138 S. Ct. 2274, 2283 (2018) (quoting *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997)). Restraints can be unreasonable in one of two ways: (1) they are per se unreasonable "because they always or almost always tend to restrict competition and decrease output," or (2) they are deemed unreasonable in light of a "fact-specific assessment," as required by the "rule of reason." *Ohio v. Am. Ex.*, 138 S. Ct. at 2283. Ordinarily, whether an agreement violates Section 1 of the Sherman Act is evaluated on a case-by-case basis. *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). However, certain arrangements have been deemed unlawful per se or "necessarily illegal," which eliminates the need to "study the reasonableness of an individual restraint in light of the real market forces at work." *Id.* "Restraints that are per se unlawful include horizontal agreements among competitors to fix prices . . . or to divide markets." *Id.* In such cases, "the per se analysis does not allow inquiry into the intent behind the restraint, its pro-

competitive justifications, or its actual effect on competition." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 773 (8th Cir. 2004).

Defendant argues the Indictment fails to allege any facts that the particular agreement into which he entered actually restrained trade. Instead, Defendant contends the Indictment relies on the "evidentiary presumption" that an agreement between competitors is a per se violation. Defendant maintains that the use of the per se "presumption" violates his rights to due process and a jury trial.

To the extent Defendant challenges the adequacy of the Indictment, the Court observes that the conduct alleged fits squarely within the caselaw establishing the per se rule, and the Government was not required to allege anything further. The Defendant is charged with "enter[ing] into and engag[ing] in a combination and conspiracy" to "suppress and eliminate competition by fixing prices, rigging bids, and allocating markets for lots offered for sale by GSAAuctions." (Indictment ¶ 1.) Courts have regularly found such conduct to amount to a per se violation. *Leegin Creative Leather Prods., Inc.*, 551 U.S. at 886 ("Restraints that are per se unlawful include horizontal agreements among competitors to fix prices or to divide markets.") (internal citation omitted); *United States v. Misle Bus & Equip. Co.*, 967 F.2d 1227, 1235 (8th Cir. 1992) (recognizing that a bid-rigging agreement among competitors is a per se violation of the Sherman Act). Because the Indictment alleged a per se violation, it does not need to allege information about the context of the restraint, such as the "intent behind the restraint, its pro-competitive justifications, or its actual effect on competition." *Craftsmen Limousine, Inc.*, 363 F.3d at 773.

5

Defendant's core challenge to the Indictment is his contention that the per se rule is constitutionally deficient.  The Court begins by noting that the Supreme Court has long acknowledged the use of the per se rule in criminal cases charged under Section 1.  *See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 216 (1940) (concluding "it would per se constitute such a restraint if price-fixing were involved"); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 396 (1927) (holding the district court "correctly withdrew from the jury the consideration of the reasonableness of" the charged price-fixing conspiracy).  Defendant nevertheless argues the application of the per se rule in a criminal proceeding is unconstitutional because it removes from consideration by the finder of fact important aspects of a Sherman Act violation, such as whether the defendant intended to enter into an agreement to restrain trade, or whether the restraint was in fact unreasonable.

The Court has not found controlling authority on this question in the Eighth Circuit, but is persuaded by the reasoning of the Courts of Appeals of other circuits that have confronted similar challenges and concluded that the per se rule was not an invalid "evidentiary presumption" but rather a legitimate substantive interpretation of the Sherman Act itself.  For example, in *United States v. Koppers Co., Inc.*, the Second Circuit considered an appeal from a defendant who had been found guilty of a per se violation of the Sherman Act.  652 F.2d 290, 291 (2d Cir. 1981).  The jury in *Koppers* found the defendant had engaged in bid rigging, a per se violation, so it did not go on to consider whether his conduct had also resulted in an unreasonable restraint of trade.  *Id.* The defendant appealed, arguing that the district court's jury instructions improperly

6

removed a key element of the offense—the reasonableness of the restraint—from the jury's consideration. *Id.* The Second Circuit upheld the conviction, reasoning that "[s]ince the Sherman Act does not make 'unreasonableness' part of the offense, it cannot be said that the judicially-created per se mechanism relieves the government of its duty of proving each element of a criminal offense under the Act." *Id.* at 294. Instead, the court offered, "[i]n cases involving behavior such as bid rigging, which has been classified by courts as a per se violation, the Sherman Act will be read as simply saying: 'An agreement among competitors to rig bids is illegal.'" *Id.* (quoting *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979).) This same analysis has been adopted in the Third, Fifth, Seventh, Ninth, and Eleventh Circuits. *E.g.*, *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 464 (3d Cir. 1979); *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 683–84 (5th Cir. 1981); *Brighton Bldg.*, 598 F.2d at 1106; *United States v. Mfrs. Ass'n of Relocatable Bldg. Indus.*, 462 F.2d 49, 50 (9th Cir. 1972); *United States v. Giordano*, 261 F.3d 1134, 1143–44 (11th Cir. 2001).

The Court recommends that the reasoning of those cases be followed in this case as well. The per se rule is not an evidentiary presumption that removes from jury consideration key elements of the offense, but rather a substantive interpretation of the statute. *See Mfrs. Ass'n of Relocatable Bldg. Indus*, 462 F.2d at 50 ("Appellants' contention that the per se rule constitutes an unconstitutional conclusive presumption misunderstands the Sherman Act."); *id.* at 52 ("The per se rule does not establish a presumption. It is not even a rule of evidence.") The Court finds that the invocation of the per se rule in the Indictment did not unconstitutionally invade the province of the

7

jury, thereby violating due process and the right to a jury trial. It therefore recommends denying Defendant's motion to dismiss on this ground.

### B.    Ancillary Restraints of Trade and the Rule of Reason

Defendant argues in the alternative that even if the per se rule were constitutional, it would nevertheless be inapplicable here, where "any restraint that did occur was ancillary and necessary to a broader procompetitive agreement." (Def's Mot. at 6–7 [Doc. No. 31].) Specifically, Defendant characterizes the arrangement between him and his alleged co-conspirators as "an agreement among a small number of people (sometimes two, sometimes three, and sometimes four) to pool their resources to bid on lots of surplus government equipment." (*Id.* at 14.) Defendant distinguishes per se unlawful restraints from the ancillary restraints that necessarily resulted from, as he describes it, "an otherwise procompetitive joint transaction or venture." (*Id.* at 13.)

The ancillary restraints doctrine provides a limited defense to an otherwise per se illegal restraint. "To be ancillary, and hence exempt from the per se rule, an agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction" and must "make the [venture] more effective [or efficient] in accomplishing its purpose." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986). Defendant therefore has a valid defense to the per se rule if he can show that any restraint resulting from the arrangement is ancillary to efficiency-enhancing economic activity.

But whether the nature of Defendant's association was that of a true joint venture or an agreement amongst competitors to suppress competition is, of course, a question of

fact that can only be resolved with evidence beyond the four corners of the Indictment. And, as an affirmative defense, the burden of proof would be on Defendant, not on the Government. *See Bd. of Regents of Univ. of Oklahoma v. Nat'l Collegiate Athletic Ass'n*, 707 F.2d 1147, 1154 n.9 (10th Cir. 1983), *aff'd*, 468 U.S. 85, 104 (1984) (finding that "the burden of proving the effectiveness and necessity" of price restraints "when considering whether to apply per se or rule of reason analysis" is properly placed on the party arguing the restraints are "ancillary to a legitimate integration"). Thus, it was not for the Government to allege in the Indictment the absence of such an affirmative defense. *United States v. Sisson*, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."); *United States v. Clark*, Crim. No. 11-032 (JRD/LIB); 2011 WL 2015224 at *3 (D. Minn. Apr. 15, 2011) (listing cases). Defendant's challenge on this ground is therefore not appropriate at this stage. *See Hughson*, 488 F. Supp. 2d at 841. To the extent Defendant wishes to mount an affirmative defense that his conduct was reasonably necessary to effectuate a legitimate joint venture, he will have that opportunity at trial. The Court therefore recommends denying Defendant's motion on this second ground.

## III.    Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Alan Gaines's Motion to Dismiss [Doc. No. 31] be **DENIED**.

Dated:  August 4, 2020                         s/ *Hildy Bowbeer*
                                                        HILDY BOWBEER
                                                        United States Magistrate Judge

9

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.